**REESE LLP**
Michael Reese (California State Bar No. 206773)
*mreese@reesellp.com*
8484 Wilshire Blvd, Suite 515
Beverly Hills, California 90211
Telephone: (213) 377-6153

Charles D. Moore (*Pro Hac Vice* Forthcoming)
*cmoore@reesellp.com*
121 N. Washington Ave., 2nd Floor
Minneapolis, Minnesota 55401
Telephone: (212) 643-0500

**POULIN | WILLEY | ANASTOPOULO, LLC**
Andre Belanger (*Pro Hac Vice* Forthcoming)
*andre.belanger@poulinwilley.com*
32 Ann Street
Charleston, South Carolina 29403
Telephone: (803) 222-2222

*Counsel for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NICOLE CHRISTINA TRUJILLO and SHERDI SARDARI KERMAN, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br>**vs.**<br><br>**QDOBA RESTAURANT CORP., BUTTERFLY EQUITY LP, AND COAST CITRUS DISTRIBUTORS LLC,**<br><br>**Defendants.** | **Case No.** '26CV5137 BJC VET<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Nicole Christina Trujillo and Sherdi Sardari Kerman, ("Plaintiffs") and bring this Class Action Complaint against defendants Qdoba Restaurant Corp. ("Qdoba"), Butterfly Equity LP ("Butterfly"), and Coast Citrus Distributors LLC ("Coast Citrus"), (collectively, "Defendants") individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff Nicole Christina Trujillo is, and at all times material hereto was, an adult resident of Aurora, Arapahoe County, Colorado.

2. Plaintiff Sherdi Sardari Kermani is, and at all times material hereto was, an adult resident of Portland, Multonomah County, Oregon.

3. Defendant Qdoba Restaurant Corporation is a foreign limited liability company organized under the laws of the State of Delaware. Defendant Qdoba is headquartered at 350 Camino de la Reina, Suite 300, San Diego, California 92108.

4. In October 2022, Butterfly Equity LP acquired Qdoba, a fast-casual Mexican restaurant chain. Butterfly Equity LP is a Delaware-formed partnership with its principal place of business at 9595 Wilshire Blvd, Ste 510, Beverly Hills, California.

5. Defendant Coast Citrus Distributors, LLC ("Coast Citrus") is a California Limited Liability Company with its principal place of business at 7597 Bristow Ct, San Diego, California. Defendant Coast Citrus distributed the contaminated jalapeño peppers to wholesale and restaurants, including Qdoba and Chipotle[1].

6. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class,

[1] https://www.cbsnews.com/news/qdoba-jalapenos-salmonella-outbreak-affects-dozens-of-states/

and at least one member of the class is a citizen of a state different from each Defendant.

7. This Court has personal jurisdiction over Defendants because Defendants transacted business within this District, including the manufacture, preparation, and sale of food products to consumers in this State, Defendants maintain a principal place of business in this State, and committed the tortious acts giving rise to this action within this State.

8. Venue is proper under 28 U.S.C §1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

## FACTUAL ALLEGATIONS

9. In August 2026, the Centers for Disease Control and Prevention ("CDC") and the U.S. Food & Drug Administration ("FDA") began notifying the public about a multistate outbreak of Salmonella Javiana infections linked to jalapeño peppers from Sinaloa, Mexico, and distributed by Coast Citrus Distributors to distributors, restaurants, and food service companies, including restaurants in the U.S.[2].

10. Salmonella Javiana ("S. Javiana") belongs to a serogroup of the Nontyphoidal Salmonella[3]. S. Javiana produces typhoid toxin or Salmonella cytolethal distending toxin (CDT)[4]. This trait distinguishes S. Javiana from most other Salmonella serotypes.

11. Illness usually occurs within 12 to 72 hours after eating food that is contaminated with Salmonella, and the symptoms usually last four to seven days.[5]

12. The most common symptoms of S. Javiana include diarrhea, fever, and

---

[2] https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-jalapeno-august-2026
[3] https://pmc.ncbi.nlm.nih.gov/articles/PMC6719869/
[4] Id.
[5] https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-jalapeno-august-2026

abdominal cramps.[6] However, in some cases, severe health conditions, including liver abscess, meningitis, and cholecystitis with gallbladder perforation have been reported[7]. Although rare, it can cause bloodstream infections in immunocompromised individuals[8]. In general, the most vulnerable population to NTS infection include children aged below four years, elderly adults, pregnant women, and immunocompromised individuals[9].

13. The most common symptoms include frequent, watery diarrhea, along with loss of appetite, weight loss, bloating, nausea, and fatigue. Less common symptoms include low-grade fever and vomiting. The time between becoming infected and becoming sick is usually about one week but can range from two (2) days to two (2) weeks or more.[10]

14. The geographic distribution of the S. Javiana serotype suggests similar sources of the infection, such as local foods and/or distribution of local food products[11].

15. Based on epidemiological information collected by CDC, a total of 431 people infected with the outbreak strain of Salmonella have been reported from 32 states[12].

16. There have been 57 hospitalizations and zero deaths reported. Illnesses started on dates ranging from June 19, 2026, to August 2, 2026. Of the 224 people interviewed, 203 (91%) reported eating at a Mexican-style restaurant before their illness, including Chipotle Mexican Grill and QDOBA, with meal dates ranging from

---

[6] https://pmc.ncbi.nlm.nih.gov/articles/PMC6719869/
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-jalapeno-august-2026

June 14, 2026, to July 16, 2026[13].

17. Federal health officials identified Coast Citrus as a supplier of the contaminated jalapeños.[14]

18. Defendant, Cost Citrus specializes in the wholesale distribution of fresh citrus products to various sectors. [15] Their products are distributed across various geographical markets, including major urban centers in the United States and select international areas, where they serve both large-scale retailers and smaller local businesses.[16]

19. The jalapeños supplied by the Defendants were distributed to, or used by, Qdoba restaurants, and, upon information and belief, the Qdoba locations at which Plaintiffs purchased and consumed the jalapeños.

20. Plaintiffs and consumers do not know, and did not have a reason to know, that the Products they purchased were contaminated with the diarrhea-causing infection. Consumers expect the food they purchase to be safe for consumption and not contaminated by harmful bacteria, which can cause a serious infection.

21. Other manufacturers formulate, produce, and sell non-harmful foods including jalapeños, which is evidence that the risk inherent with Defendants' products is demonstrably avoidable.

22. Feasible alternative formulations, designs, and materials are currently available and were available to Defendants at the time the Products were formulated and manufactured.

23. At the time of their purchases, Defendants did not notify Plaintiffs, and similarly situated consumers, of the Product's risk of *S. Javiana* infection through the product labels, instructions, ingredients list, other packaging, advertising, or in any

---

[13] *Id.*
[14] *Id.*
[15] https://www.preqin.com/data/profile/asset/coast-citrus-distributors/776364
[16] *Id.*

other manner, in violation of state and federal laws.

24. Plaintiffs purchased the Products, without knowing that Products could infect those who consumed them, thus causing serious harm to those who use such Products.

25. If Plaintiffs had been aware of the risk of *S. Javiana* infection, they would not have purchased the Products.

26. Plaintiffs bargained for Products that were safe to consume. Defendants' Products were unsafe to consume due to the risk of *S. Javiana* infection.

27. No reasonable consumer would expect the Products to be contaminated with *S. Javiana bacteria*. Accordingly, Plaintiffs and similarly situated consumers were injured as a result of purchasing the Products, including, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendants; they were deprived of the benefit of their bargain; they spent money on a product that did not have any value or had less value than warranted; and they would not have purchased and consumed had they known the truth about the products.

28. Additionally, because the facts concern a safety-related deficiency in the Products, Defendants were under a continuous duty to disclose to Plaintiff and consumers the true nature of the Product and to disclose the Product was contaminated with *S. Javiana*. Furthermore, Defendants, as the owners, manufacturers, marketers, and sellers, had a duty to disclose because of Defendants' exclusive and/or superior knowledge concerning the composition of the Product.

29. Plaintiffs, and similarly situated class members, purchased dangerous Products under the presumption that the Products were safe. Since the tainted food products are dangerous, they have suffered economic losses.

30. As a result of the above losses, Plaintiffs and Class Members seek damages and equitable relief.

***Plaintiff Trujillo's Experience***

31. Plaintiff Trujillo purchased and consumed from a Qdoba fast food restaurant located at 23923 E. Prospect Ave. C Aurora, Co 80016 on July 31, 2026.

32. Plaintiff Trujillo ordered nachos with chicken, queso, cilantro, and two types of salsas. The plate included the contaminated jalapeños distributed by Defendant Coast Citrus.

33. A few hours after consuming the meal, Plaintiff became ill and experienced nausea, diarrhea, and abdominal pain. Plaintiff did not seek medical treatment for these symptoms and was unable to work as a result of the illness and missed work.

34. As a direct and proximate result of the *S. Javiana* infection, Plaintiff Trujillo suffered physical illness, pain, and suffering, and other injuries and damages, including symptoms and effects compatible with an S. Javiana infection. Plaintiff Trujillo also lost the time spent remedying the effects of the infection, lost wages, and other injuries.

***Plaintiff Sardari Kermani's Experience***

35. Plaintiff Sardari Kermani purchased and consumed food from the Qdoba fast food restaurant located at 825 NE Weidler St. Portland, Oregon, on July 11, 2026.

36. Plaintiff Kermani ordered a brisket birria burrito bowl. The plate included the contaminated jalapeños distributed by Defendant Coast Citrus. Plaintiff did not seek medical treatment and did not miss work as a result of the illness.

37. A few hours after consuming the meal, Plaintiff Kermani became ill and experienced severe diarrhea.

38. As a direct and proximate result of the *S. Javiana* infection, Plaintiff Kermani suffered physical illness, pain, and suffering, and other injuries and damages, including symptoms and effects compatible with and S. Javiana infection. Plaintiff Kermani also lost the time spent remedying the effects of the infection and other

injuries.

39. Plaintiffs Trujillo and Kermani relied upon Defendants' omissions regarding the presence of *S. Javiana* in making his their to purchase the Products. Plaintiffs suffered injury in that they would not have bought from Qdoba if they had known the truth. Plaintiffs would like to buy from Qdoba in the future if the omissions are corrected. However, they do not currently intend to do so because they cannot rely on the accuracy of the representations in deciding whether or not they should purchase from Qdoba but would be able to do so once the Court issues an injunction.

## CLASS ACTION ALLEGATIONS

40. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

41. Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4), individually, and as the Class representatives on behalf of the following:

> **Nationwide Class:** All persons within the United States who purchased Jalapeños distributed by Coast Citrus Distributors from Qdoba during the relevant time period.

> **Colorado Subclass:** All persons within the State of Colorado who purchased Jalapeños distributed by Coast Citrus Distributors from Qdoba during the relevant time period.

> **Oregon Subclass:** All persons within the State of Oregon who purchased Jalapeños distributed by Coast Citrus Distributors from Qdoba during the relevant time period.

42. The Nationwide Class and any subclass shall collectively be referred to herein as the "Class" or "Class Members."

43. Plaintiffs reserve the right to amend the Class definitions if further

investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

44. Excluded from the Class are governmental entities, Defendants, their officers, directors, affiliates, legal representatives, and employees.

45. This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

46. **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Class numbers at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

47. **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Class that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include, without limitation:

a. Whether Defendants negligently failed to exercise reasonable care in the farming, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale the Products;
b. Whether Defendants sold the contaminated Products, which were unreasonably dangerous to consumers such as Plaintiffs and members of the Class;
c. Whether Defendants failed to adequately warn Plaintiffs and the Class of the dangers with respect to the contaminated Products;
d. Whether Plaintiffs and the Class suffered damages as a result of the contaminated Products;
e. Whether Defendants were negligent for failure to test;

f. Whether Defendants' advertising, merchandising, and promotional materials directed to Plaintiffs were deceptive regarding the risks posed by Defendants' Products;

g. Whether Defendants omitted material information regarding the safety of the Products;

h. Whether Defendants' Products were merchantable; and

i. Whether Defendants were unjustly enriched by sales of the Products.

48. The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendants' Products throughout the United States, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to the other available methods for the fair and efficient adjudication of Plaintiff's claims.

49. **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of those of the Class in that the Class members uniformly purchased Defendants' Products and were subjected to Defendants' uniform merchandising materials and representations at the time of purchase.

50. **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

51. **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests do not conflict with the

interests of the Class that Plaintiff seeks to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and undersigned counsel.

52. **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

53. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members as described below, with respect to the members of the Class as a whole. Plaintiffs seek to certify the Class to enjoin Defendants from selling or otherwise distributing the Products as labeled until such time that Defendants can demonstrate to the Court's satisfaction that the Products comply with the advertised benefits and are otherwise safe to use as intended.

## CAUSES OF ACTION

## COUNT I

## Violation of California Unfair Competition Law ("UCL")

## (Cal. Bus. & Prof. Code §§ 17200, et seq.)

## (Plaintiffs on Behalf of the National Class)

54. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

55. California Business & Professions Code, sections 17200, et seq. (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

56. The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

57. Food labeling in the United States is regulated by the FDCA.

58. "California's analog to the federal …(FDCA) is known as the Sherman Law. It incorporates by reference all federal food labeling standards." *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 844 (9th Cir. 2024).

59. The FDCA prohibits introduction into interstate commerce "of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

60. California, through the Sherman Law, has adopted this same standard. *See* Cal. Health & Safety Code § 110660(a).

61. On information and belief, at least some of the adulterated jalapeños that Plaintiffs ate came from Defendant Coast Citrus' processing facility in California.

62. On information and belief, decisions on, overseeing the implementation of, and the failure to ensure the implementation of the proper policies and procedures for ensuring the safe handling, processing, shipping or food items, including the jalapeños,

occurred at each Defendants' separate headquarters in California.

63. By selling jalapeños that were "adulterated or misbranded", Defendants violated the Sherman Law. This violation is enforceable via the unlawful prong of UCL.

64. Defendants knew or should have known of their unlawful conduct.

65. Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from selling adulterated or misbranded food.

66. All of the conduct alleged herein occurs and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

67. Pursuant to Business and Professions Code Section 17203, Plaintiffs and the Class Members seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of selling adulterated or misbranded food.

68. Plaintiffs and the Class Members have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct.

69. Plaintiffs and the Class Members seek restitution of ill-gotten gains pursuant to the UCL.

**COUNT II**

**Violation Colorado's Consumer Protection Act ("CCPA")**

**(C.R.S. §§ 6-1-101, et seq.)**

**(Plaintiff Trujillo on Behalf of the Colorado Subclass)**

70. Plaintiff Trujillo repeats and re-alleges the allegations above as if set forth herein.

71. Plaintiff Trujillo brings this claim on behalf of herself and the proposed Colorado Subclass.

72. Plaintiff Trujillo, the members of the Colorado Subclass, and Defendants are "persons" within the meaning of C.R.S. § 6-1-102(6).

73. Plaintiff Trujillo and the members of the Colorado Subclass are actual or potential consumers of Defendants' goods, food, and products within the meaning of C.R.S. § 6-1-113(1).

74. Defendants engaged in unfair or deceptive trade practices in the course of their business, vocation, or occupation, in violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-105(1), by, inter alia:

a. Knowingly or recklessly making false representations as to the characteristics, ingredients, uses, or benefits of goods and food, in violation of C.R.S. § 6-1-105(1)(e);

b. Representing that goods, food, or products are of a particular standard, quality, or grade, when Defendants knew or should have known that they were of another, in violation of C.R.S. § 6-1-105(1)(g);

c. Advertising goods, food, or products with the intent not to sell them as advertised, in violation of C.R.S. § 6-1-105(1)(i); and

d. Failing to disclose material information regarding goods, food, or products—specifically, the presence or potential presence of *S. Javiana* contamination—which information was known at the time of an advertisement or sale, where such failure to disclose was intended to induce consumers to enter into transactions into which they would not have entered had the information been disclosed, in violation of C.R.S. § 6-1-105(1)(u).

75. Defendants' unfair and deceptive trade practices significantly impacted the public as actual or potential consumers of Defendants' goods and food in the State of Colorado. Defendants distributed and sold the contaminated food across numerous retail locations in Colorado (including locations in Aurora) to thousands of consumers who possessed minimal bargaining power and relied entirely on Defendants' safety representations and material omissions.

76. Defendants possessed exclusive, superior knowledge regarding the manufacturing, sourcing, testing, and contamination risks associated with the raw materials (including jalapeños supplied by Coast Citrus) used in the food.

77. Defendants intended that Plaintiff Trujillo and the members of the Colorado Subclass would rely upon their advertising, representations, and material omissions.

78. As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff Trujillo and the Colorado Subclass suffered injury in fact to legally protected interests, including economic losses from purchasing worthless, unsafe, or overvalued food, as well as physical symptoms and personal injuries resulting from *S. Javiana* exposure.

79. Defendants' conduct was committed in bad faith—specifically, it was fraudulent, willful, knowing, or intentional within the meaning of C.R.S. § 6-1-113(2)(a)(III) and (2.3).

80. Pursuant to C.R.S. § 6-1-113, Plaintiff Trujillo and the Colorado Subclass seek all available relief, including actual damages or $500 per statutory violation (whichever is greater), treble (triple) damages for Defendants' bad faith conduct, injunctive relief prohibiting Defendants' deceptive practices, pre- and post-judgment interest, and reasonable attorneys' fees and costs of court.

**COUNT III**

**Violation Oregon Unlawful Trade Practices Act ("UTPA")**

**(OSR §§ 646.605, et seq.)**

**(Plaintiff Kermani on Behalf of the Oregon Subclass)**

81. Plaintiff Kermani repeats and re-alleges the allegations above as if set forth herein.

82. Plaintiff Kermani brings this claim on behalf of herself and the proposed Oregon Subclass.

83. Plaintiff Kermani, the members of the Oregon Subclass, and Defendants are "persons" within the meaning of ORS § 646.605(4).

84. Defendants engage in the conduct of "trade" and "commerce" under the UTPA. Defendants do this by advertising, offering, and distributing goods in a manner that directly and indirectly affects people of the state of Oregon. ORS § 646.605(8).

85. Defendants engaged in unfair or deceptive trade practices in the course of their business, vocation, or occupation, in violation of the UTPA, ORS § 646.608(1), by, inter alia:

a. Representing goods to have the characteristics, ingredients, uses, or benefits they do not, in violation of ORS § 646.608(1)(e);

b. Representing that goods, food, or products are of a particular standard, quality, or grade, when they were of another, in violation of ORS § 646.608(1)(g);

c. Advertising goods, food, or products with the intent not to sell them as advertised, in violation of ORS § 646.608(1)(i); and

d. Failing to disclose material information regarding goods, food, or products—specifically, the presence or potential presence of *S. Javiana* contamination—which information was known at the time of an advertisement or sale, where such failure to disclose was intended to induce consumers to enter into transactions into which they would not have entered had the information been disclosed, in violation of ORS § 646.608(1)(u).

86. Defendants' unfair and deceptive trade practices significantly impacted the public as actual or potential consumers of Defendants' goods and food in the State of Oregon. Defendants distributed and sold the contaminated food across numerous retail locations in Oregon (including locations in Portland) to thousands of consumers who

possessed minimal bargaining power and relied entirely on Defendants' safety representations and material omissions.

87. Defendants possessed exclusive, superior knowledge regarding the manufacturing, sourcing, testing, and contamination risks associated with the raw materials (including jalapeños supplied by Coast Citrus) used in the food.

88. Defendants intended that Plaintiff Trujillo and the members of the Oregon Subclass would rely upon their advertising, representations, and material omissions.

89. As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff Kermani and the Oregon Subclass suffered injury in fact to legally protected interests, including economic losses from purchasing worthless, unsafe, or overvalued food, as well as physical symptoms and personal injuries resulting from *S. Javiana* exposure.

90. On information and belief, Defendants acted knowingly and/or recklessly.

91. Pursuant to ORS § 646.638, Plaintiff Kermani and the Oregon Subclass seek all available relief, including actual damages or $200 per statutory violation (whichever is greater), punitive damages, injunctive relief prohibiting Defendants' deceptive practices, pre- and post-judgment interest, and reasonable attorneys' fees and costs of court.

**COUNT IV**

**STRICT PRODUCT LIABILITY**

**(Plaintiffs on Behalf of the National Class,**
**Colorado Subclass, and Oregon Subclass)**

92. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

93. Defendants manufactured, supplied, and sold the food products contaminated with *S. Javiana* that caused Plaintiffs' illness and damages.

94. The Products that caused Plaintiffs' injuries were defective at the time

they left Defendants' control. More specifically, the Products were unreasonably dangerous for their ordinary and expected use because they were contaminated with *S. Javiana*, a dangerous bacterium.

95. The Product was sold to Plaintiffs without any change in its defective condition, and the food was used in the manner expected and intended, *i.e.,* human consumption.

96. Defendants had a duty to warn Plaintiffs and the Class Members regarding the risk of contamination associated with the Products.

97. Defendants were in a superior position to know of the defect or contamination, yet as outlined above, chose to do nothing when the defect became known to them.

98. Defendants failed to provide adequate warnings regarding the risks of the Products after knowledge of the defect was known only to them.

99. Despite their knowledge of the defect and obligation to unilaterally strengthen the warnings, Defendants instead chose to actively conceal this knowledge from the public.

100. Plaintiffs and Class Members would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the contamination and the risks of purchasing the Products.

101. Plaintiffs' injuries occurred as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that was manufactured, supplied, and sold by Defendants.

102. The Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT V:
## NEGLIGENCE
**(Plaintiffs on Behalf of the National Class, Colorado Subclass, and Oregon Subclass)**

103. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

104. Defendants owed a duty to consumers to produce a product that was safe for its intended consumption.

105. Defendants breached this duty by producing a product that was dangerous for its intended consumption. Defendants knew or should have known that *S. Javiana* contaminated Products would cause injuries once exposed to humans and thus be worthless as a safe-to-consume Product.

106. As a direct result of this breach, Plaintiffs suffered injury in that Plaintiffs have been deprived of their benefit of the bargain. Plaintiffs' injuries were caused in fact by Defendants' breach. But for Defendants' negligent manufacture and improper oversight, Plaintiffs would not have been injured.

107. Further, Plaintiffs' injuries were proximately caused by Defendants' breach. It is foreseeable that Products containing *S. Javiana* would cause injury, and it is foreseeable that a consumer would lose their benefit of the bargain if they purchased dangerous Products.

108. Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

**COUNT VI**

**UNJUST ENRICHMENT**

**(Plaintiffs on Behalf of the National Class, Colorado Subclass, and Oregon Subclass)**

109. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

110. Plaintiffs plead this in the alternative to the above causes of action.

111. Plaintiffs, and the other members of the Class, conferred benefits on Defendants in the form of monies paid to purchase Defendants' contaminated and worthless Products. These monies were not gifts or donations but were given in exchange for the Products. As for the Defendant, Qdoba, Plaintiffs and Class Members would have paid them directly for food sold at their establishments containing the contaminated jalapeños. As for the Defendants, Coast Citrus, it is believed that Qdoba would have purchased the contaminated products from them or would have paid them to farm and distribute food supplies to Qdoba for the preparation and sale of food products to consumers such as the Plaintiffs and Class Members.

112. Defendants voluntarily accepted and retained these benefits.

113. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for Products unfit for human consumption, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

114. Defendants received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiffs and Class Members, because Plaintiffs and Class Members purchased products that were not what they bargained for and were not safe for consumption.

115. Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because

Defendants' labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs and Class Members, because they would not have purchased the Products had they known the true facts.

116. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class Members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class, alleged herein, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Class and Plaintiffs' attorneys as Class Counsel;
b. For an order declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;
c. For an order declaring the Defendants' conduct violates the causes of action referenced herein;
d. For an order finding in favor of Plaintiffs and the Class on all counts;
e. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;
f. For prejudgment interest on all amounts awarded;
g. For an order of restitution and all other forms of equitable monetary relief;
h. For injunctive relief as pleaded or as the Court may deem proper; and
i. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.
j. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all claims so triable.

Dated: September 10, 2026

Respectfully Submitted,

*/s/ Michael R. Reese*

Michael Reese (Cal. Bar No. 206773)
**REESE LLP**
*mreese@reesellp.com*
8484 Wilshire Blvd, Suite 515
Beverly Hills, California 90211
Telephone: (213) 377-6153

Charles D. Moore (*Pro Hac Vice* Forthcoming)
*cmoore@reesellp.com*
121 N. Washington Ave., 2nd Floor
Minneapolis, Minnesota 55401
Telephone: (212) 643-0500

**POULIN|WILLEY|ANASTOPOULO, LLC**
Andre Belanger (*Pro Hac Vice* Forthcoming)
*andre.belanger@poulinwilley.com*
32 Ann Street
Charleston, South Carolina 29403
Telephone: (803) 222-2222

*Counsel for Plaintiffs and the Proposed Classes*